IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARMANDO HERRERA,

        Plaintiff,                  No. CIV S-10-1744 GEB EFB P

    vs.

GARDNER, et al.,

        Defendants.          ORDER AND
                                       FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Plaintiff has filed motions for preliminary injunctive relief, a motion to stay, and a motion to amend his complaint. Defendants have filed a motion to dismiss, which plaintiff has not opposed.

**I.    Motions for Injunctive Relief**

The court heard arguments on plaintiff's motions for preliminary injunctive relief on April 20, 2011.

As set out in the court's April 15 order:

> Plaintiff claims that defendants knowingly classified him as an associate to the Mexican Mafia gang, even though in the past he was housed in protective custody because the Mexican Mafia gang is his enemy. He declares that if he is housed with gang members they will kill him.

1

Specifically, plaintiff has declared under penalty of perjury that in 1981 he was placed in protective custody because his brother had dropped out of the gang. Dckt. No. 8. Recently, an inmate allegedly told plaintiff that he was going to stab him because the inmate knew that plaintiff's brother had been a dropout. Plaintiff claims that correctional officers told plaintiff that they would not protect him because plaintiff had filed a lawsuit against CDCR board members. Plaintiff also alleges that, in the past, prison officials put him with his enemies in retaliation for 'giving officers names to the courts' and he was beaten by ten inmates and had to be hospitalized.

Plaintiff attaches a document, dated 7/16/82, that appears to be a prison record. The document states:

> Subject was endorsed by the CSR for CTF SHU on 10/2/81 based on potential for future mainline housing which cannot be accomplished [illegible]. . . Folsom due to possible enemy factors. Committee notes CDC 812 which lists [illegible] at San Quentin and which lists Subject as an EME (Mexican Mafia associate). CDC 812 also refers to Brother, Ernest Herrera, B-51237 who is currently out on PC status at San Quentin due to EME dropout status . . . . In the CAC investigation, departmental records reflected Subject is an associate of the prison gang known as EME (Mexican Mafia). Subject denies ever having been a member of the gang and he contends that he can program in the CTF Central GP is he is released to mainline . . .

Dckt. No. 8 at 3. He also attaches another document dated 8/5/81, which is more difficult to read, but states in part:

> S made personal appearance before this committee as a new arrival, who was placed in Ad. Seg. because of information in his file which indicates that his life might be in danger at this institution. Specifically, S's brother Earnest Herrera B-51237, is a PC case at SQ, due to dropping out of the EME. In interview S presented a facade claiming that . . . and said he knows that his brother is a PC from the EME, but he . . . . Realistically, we know that this is not true that if one brother's in disfavor with a gang, the other brother can be in extreme jeopardy. Based on this we're not willing to take a chance on his life and are retaining him Indeterminably. SHU staff can determine whether or not transfer to SQ might resolve the situation as the EME are locked down at that institution, S might be able to walk a mainline . . . . He seem to indicate that in fact he may realize that he might be in some danger and presenting a brave front.

*Id.* at 4.

Plaintiff submitted another pleading under penalty of perjury in which he declares that he has been put in administrative segregation because defendants classified him as an associate to the Mexican Mafia gang. *See* Dckt. No. 32. He declares

that the reason that defendants are 'lying [and] . . . saying I'm an associate to the prison gang' is that they can house him with members of the Mexican Mafia, who will kill him. *Id.*

Dckt. No. 50.

The court ordered defendants to show cause why the court should not issue an order restraining defendants and CDCR from allowing plaintiff to come into contact with Mexican Mafia gang members, associates or sympathizers, and set the motion for hearing. Dckt. No. 50. At the hearing, plaintiff submitted further exhibits in support of his motion. *See* Dckt. No. 55 (letter from family member to defendant Lee and Warden Dickinson stating that plaintiff has been falsely accused of being a gang member, and that he had been in protective custody; other letters from family members; copies of internal appeals and prison records). The court ordered defendants to submit further briefing explaining the procedures CDCR is taking and will take in the future to ensure plaintiff's safety. Dckt. No. 56. Defendants responded to the court's order. Dckt. No. 59. The court then ordered defendants to submit supplemental briefing remedying certain defects in their response. Dckt. No. 72. Defendants complied. Dckt. No. 73.

Defendants' responses state that a classification committee met at CMF on April 27, 2011. Defendants submit a declaration from Garry, a member of the committee. Garry declares that plaintiff was validated as an associate of the Mexican Mafia gang "because of a drawing bearing symbols associated with the gang that he attempted to send out in the mail in December 2010," and that CDCR policy requires that he be housed in a security housing unit. Because plaintiff has mental health needs, he can only be transferred to a prison with a PSU (Psychiatric Services Unit).

Garry declares that the committee determined that plaintiff should be transferred to SAC's PSU. Garry declares that at no point in the meeting did plaintiff mention that he was an enemy of the Mexican Mafia. The committee did not have the 1981, 1982 and 1994 chronos that noted that plaintiff was an enemy of the Mexican Mafia. However, Garry states that had the committee known of these concerns, it would not have affected the committee's decision to

recommend transfer to SAC.

Garry further declares that around May 6, he learned that the classification staff representative did not endorse plaintiff for transfer to SAC. Instead, plaintiff was endorsed for transfer to Pelican Bay's PSU.

Defendants also submit a declaration from A. Pepiot, a Lieutenant at Pelican Bay State Prison who works in the PSU. Dckt. No. 73-2. Pepiot declares that inmates in the Pelican Bay PSU are single-celled an on walk-alone yard. Inmates are not allowed out of their cells in groups. Cell doors are opened one at a time, and inmates are removed one at a time in restraints. A distance of 100-150 feet is always maintained between escorts. Each inmate remains under the escort of two officers. Inmates never have contact with each other. In group therapy, inmates are placed one at a time in holding cells, and they are removed in the same manner. He states that inmate attacks are "rare [,] if not non-existent." Based on his review of records, Pepiot is not aware of any inmate assaults in the PSU in the last three years. Since October 2006, there were three incidents of attempted battery in the PSU, involving attempts to throw a liquid into another inmate's cell, throw toilet water onto an adjoining exercise module, and spit on another inmate.

To be entitled to preliminary injunctive relief, a party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). The Ninth Circuit has also held that the "sliding scale" approach it applies to preliminary injunctions as it relates to the showing a plaintiff must make regarding his chances of success on the merits survives *Winter* and continues to be valid. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a

4

1  likelihood of irreparable injury and that the injunction is in the public interest."). *Id.*

2  In cases brought by prisoners involving conditions of confinement, any preliminary
3  injunction "must be narrowly drawn, extend no further than necessary to correct the harm the
4  court finds requires preliminary relief, and be the least intrusive means necessary to correct the
5  harm." 18 U.S.C. § 3626(a)(2).

6  It is not entirely clear what relief plaintiff wishes to obtain through his motion for a
7  preliminary injunction. The court construed plaintiff's motions for injunctive relief as a request
8  that plaintiff be isolated from the Mexican Mafia. *See* Dckt. No. 50 (ordering defendants to
9  "show cause why the court should not issue an order restraining defendants and CDCR from
10 allowing plaintiff to come into contact with Mexican Mafia gang members, associates or
11 sympathizers"). Plaintiff has also asked the court to "stop this transfer." Dckt. No. 60.
12 However, this request seems to be based on plaintiff's belief that he will be transferred to a
13 prison "where the Mexican Mafia and the associate are at." *Id.* Therefore, the court construes
14 his motions for injunctive relief as a request that he not be allowed to come into contact with
15 Mexican Mafia gang members, associates and sympathizers.

16 Here, defendants have submitted a declaration by a CDCR employee declaring under
17 penalty of perjury that if plaintiff is transferred to Pelican Bay he will not be allowed to come
18 into contact with any other inmates. Based on the declarations provided by defendants, plaintiff
19 will be single-celled and will be on walk-alone yard, and will have no physical contact with any
20 other inmates. Thus, defendants have represented to the court that plaintiff will not be allowed
21 to come into contact with Mexican Mafia members, associates and sympathizers. This is the
22 very relief that plaintiff seems to have requested. As noted above, any preliminary injunction
23 should extend no further than necessary to correct the harm the court finds requires preliminary
24 relief. As discussed above, defendants have shown that arrangements and procedures have been
25 put in place to prevent plaintiff from being exposed to Mexican Mafia gang members and
26 associates and that there is no longer any reason to order further preliminary injunctive relief.

1 Accordingly, plaintiff's request for injunctive relief must be denied as moot.

2 **II.     Request to Amend Complaint**

3 Plaintiff has filed a document titled "to amended with civil case," which the court 4 construes as a request to amend his complaint. Dckt. No. 77. Plaintiff requests permission to 5 "amend this civil case that on October 18, 2010 . . . was dismissed with prejudice." *Id.* at 2. He 6 states that defendant Borsh said "in two weeks, I'll be back and I want you to tell on an inmate 7 and if not, you're going to . . . ad segregation because you should have though[t] about filing on 8 those CDCR board members!" The rest of the document reiterates the allegations that plaintiff 9 has made throughout this litigation. He also asks that the court assist him in getting a chrono 10 that is missing from his c-file. Finally, plaintiff states "P.S. I'm safe here at prison hospital." He 11 attaches exhibits, including prison records, medical records, and a copy of a previous court order.

12 After a responsive pleading is filed, a party may amend its pleading only with the 13 opposing party's written consent or the court's leave, which should be freely given "when justice 14 so requires." Fed. R. Civ. P. 15(b). Here, defendants have already filed their responsive 15 pleading, and they oppose plaintiff's motion to amend. *See* Dckt. Nos. 74, 78. Plaintiff does not 16 make any allegations that significantly differ from the allegations in the operative complaint. It 17 is unclear how or why he wishes to amend his complaint, if indeed this is his goal. Therefore, 18 justice does not require that he be given leave to amend, and the court denies his request without 19 prejudice.

20 Plaintiff is cautioned that if he brings a motion to amend his complaint in the future, he 21 must attach an amended complaint and must comply with Local Rule 220 (changed pleadings) 22 which provides that "every pleading to which an amendment or supplement is permitted as a 23 matter of right or has been allowed by court order shall be retyped and filed so that it is complete 24 in itself without reference to the prior or superseded pleading."

25 ////

26 ////

### III. Motion to Stay

On June 2, 2011 plaintiff filed a "motion to postpone all proceedings." Plaintiff writes that his illnesses prevent him from thinking clearly. He asks that the case be stayed until "after the year 2012." He submits a medical record stating "[t]his 59-year-old patient is known for chronic psychiatric disorder, prostatic hypertrophy, glaucoma, and chronic lower back pain. He is poor in safety, having slow physical reflexes, poor judgment, poor coordination, and poor memory."

Plaintiff attaches a copy of the court's March 31, 2011 order informing him of the requirements for opposing a motion for summary judgment and stating "[i]f there is good reason why such facts are not available to plaintiff when he is required to oppose a motion for summary judgment, the court will consider a request to postpone considering the motion."

Defendants have not filed an opposition or statement of no opposition to plaintiff's motion. Instead, defendants have filed a motion to dismiss the case as unexhausted and plaintiff has not filed an opposition to that motion. His request for stay seems to suggest that he needs additional time to prepare his opposition to the motion to dismiss.[1] Therefore, the court will first rule on plaintiff's motion for a stay before addressing defendants' as-yet-unopposed motion to dismiss.

////

////

---

[1] Although motions to dismiss for failure to exhaust are filed under Rule 12, Fed. R. Civ. P., they do not ordinarily challenge the sufficiency of the allegations of the complaint but rather present a factual challenge as to whether plaintiff can establish that exhaustion has occurred, or perhaps more accurately stated, whether plaintiff can overcome the defendants' evidence that exhaustion has not occurred. Failure to exhaust is an affirmative defense on which the defendants bear the burden of proof and, as this court has previously explained, where the facts are disputed such motions typically require application of Rule 56 standards. *See Bun v. Felker*, No. CIV S–09–0631 LKK EFB P, 2011 WL 794909 (E.D. Cal. 2011); *Chatman v. Felker*, No. Civ. S–06–2912 LKK EFB, 2010 WL 3431806, at *2–3 (E.D. Cal. Aug. 31, 2010). Thus, to the extent that plaintiff is alleging that he needs additional time to oppose the exhaustion motion, the standards under Rule 56 (d) (formerly 56(f)) will apply.

## IV. Conclusion

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion to amend his complaint is denied without prejudice; and

2. Within 14 days of the date of this order, defendants shall file an opposition or statement of no opposition to plaintiff's request to stay the case.

Further, it is hereby RECOMMENDED that plaintiff's motions for preliminary injunctive relief, Dckt. Nos. 46, 48, and 60, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 26, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

8